IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:24CR130 |
| vs. | : | |
| JORDAN DODD | : | JUDGE BRENNAN |
| Defendant. | : | |

**SENTENCING MEMORANDUM OF DEFENDANT JORDAN DODD**

**I.      INTRODUCTION**

Defendant Jordan Dodd is before the Court for sentencing following his guilty plea to one count of possession of child pornography and one count of conspiracy to produce child pornography. Defendant raised four (4) objections to the presentence investigation report (PSR), objection one, relating to paragraph four of the PSR, is withdrawn. The remaining objections were detailed in the timely submitted objection letter dated May 4, 2025.

At issue is a very troubled young man with a complicated, violent and isolated upbringing, who engaged in very serious conduct. Notwithstanding Jordan's cognitive limitations, he fully understands that his conduct warrants a lengthy sentence, and remains hopeful that he will benefit from programming and rehabilitative efforts offered by the Bureau of Prisons.

**II.     SENTENCING FRAMEWORK**

The Court is tasked with imposing "a sentence sufficient, but not greater than necessary," to vindicate Congress' sentencing mandate, set forth in 18 U.S.C. § 3553(a)(2). The Court must begin sentencing proceedings by first correctly calculating the applicable guideline range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). However, this guideline range is only "the starting point

and the initial benchmark." The Court "may not presume that the Guideline range is reasonable." *Id.* at 596-97. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 595.

### III.   SENTENCING GUIDELINES - OBJECTIONS

#### A. The enhancement under 2G2.2(b)(5) – for pattern of activity of sexual abuse or exploitation of a minor does not apply

Defendant objected to the PSR's 5 level enhancement under 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, because of Defendant's prior juvenile court case where he was adjudicated a delinquent in 2014 for gross sexual imposition (GSI), a third-degree felony. (PSR 27) Defendant was between the ages of 12 and 13 when the conduct occurred. (PSR 52). As explained in his timely submitted objection letter, the enhancement does not apply because (1) under the authority cited below, the enhancement does not extend to acts unrelated to the offense of conviction, and (2) the 2014 adjudication for GSI does not qualify as the "sexual abuse or exploitation of a minor."

The enhancement under 2G2.2(b)(5) applies when a defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The Guideline's commentary defines this as any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct. A review of the text of the Guidelines supports the conclusion that this enhancement, like all the other enhancements in this section is limited to conduct related to the offense of

2

conviction. In contrast, the commentary expands the application of the enhancement far beyond the offense of conviction. Defendant submits that under the new interpretative standards mandated by *Kisor v. Wilkie,* 588 U.S. 558 (2019), 139 S.Ct. 2400, the scope of the enhancement is confined to past sexual abuse or exploitation activities <u>related to the offense of conviction</u>.

The Supreme Court's decision in *Kisor v. Wilkie,* 588 U.S. 558 (2019), 139 S.Ct. 2400, now limits the deference a sentencing court owes to the Guidelines commentary. *U.S. v. Phillips,* 54 F4th 374 (6th Cir. 2022). Prior to *Kisor,* sentencing courts were instructed to apply what is called *Auer* deference to the commentary unless the commentary's interpretation was "plainly erroneous or inconsistent" with the Guideline itself. *Id.* (citations omitted). However, *Kisor* cautioned that a court should not reflexively defer to an agency's interpretation. "Before doing so, a court must find that the regulation is "genuinely ambiguous, even after [the] court has resorted to all the standard tools of interpretation" to eliminate that ambiguity. *Id.* at 2414. The agency's interpretation also "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* at 2416.

Following *Kisor,* the Sixth Circuit Court of Appeals in *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021), held that *Kisor* applies to the commentary that accompanies the sentencing guidelines. *Riccardi* considered an enhancement under 2B1.1 and Application Note 3(F)(i). As explained by the *Riccardi* Court: "We thus do not immediately defer to Application Note 3(F)(i). Rather, we first ask whether § 2B1.1 is "genuinely ambiguous." *Id.* at 486. Following the same analysis, and as recently seen in *United States v. Debus,* 688 F.Supp.3d 201 (M.D. Penn. 2023), because the enhancement under 2D2.2(b)(5) is not genuinely ambiguous, it is unnecessary to resort to the commentary.

In *United States v. Debus,* 688 F.Supp.3d 201 (M.D. Penn. 2023), the sentencing court

3

considered whether Debus' prior repeated sexual abuse of a minor warranted the pattern of activity involving sexual abuse or exploitation of a minor enhancement when his offense of conviction was receipt of child pornography. The *Debus* Court found that the enhancement could not apply to unrelated conduct:

> We are persuaded by the First and Sixth Circuits' cogent analyses and adopt them as our own, as supplemented by the foregoing discussion. Section 2G2.2(b)(5) is not genuinely ambiguous when examined with "traditional tools of construction." See *Nasir*, 17 F.4th at 471 (quoting *Kisor,* 139 S. Ct. at 2415). Context resolves any latent ambiguity about the enhancement's scope and forecloses consideration of the Sentencing Commission's more punitive position, which unreasonably expands the enhancement to reach conduct unrelated to a defendant's offense of conviction. Debus's past conduct lacks any logical or temporal connection to his admitted receipt of child pornography. He did not "engage" in a pattern-of-activity involving the sexual abuse of a minor when he received the images for which he has pled guilty. Thus, his previous conviction cannot be used to enhance his base offense level under Section 2G2.2(b)(5).

The strongest indicator the enhancement's application is confined to "past sexual abuse or exploitation activities related to the offense of conviction" is its placement in subsection (b) "under the listing of 'Specific Offense Characteristics.' " *Id.* citing *U.S. v. Surrat*, 87 F.3d 814 at 819 (6th Cir. 1996). Chapter Two of the Guidelines, where we find the enhancement, addresses "Offense Conduct," while past acts unrelated to the offense of conviction are addressed in Chapter Four as part of the defendant's criminal history. *See, e.g.,* U.S.S.G. § 4B1.5 ("Repeat and Dangerous Sex Offender Against Minors"). The general focus of each provision in Section 2G2.2 lends further support for an interpretation limited in scope: Eight of that section's various provisions address what "the offense involved." *See* U.S.S.G. § 2G2.2(b)(3)(A), (C), (D), (E), (b)(4), (b)(6), (b)(7), (c)(1). One provision implicates "the material involved." *See id.* § 2G2.2(b)(2). Another pertains to "the defendant's conduct." *See id.* § 2G2.2(b)(1)(B). And three turn on "if the defendant" did something, *e.g.*, "distributed in exchange for any valuable consideration"; "knowingly engaged in

4

distribution, other than distribution described" in previous subdivisions; or "engaged in a pattern of activity." *See id*. § 2G2.2(b)(3)(B), (F), (b)(5). As explained by the *Debus* Court: "It would be an unusual interpretive exercise to single out subsection (b)(5) as the sole provision applicable to conduct unrelated to the specific offense subject to enhanced punishment, as the commentary commands we must. We doubt Congress intended this result when it directed the Commission to adopt the pattern-of-activity enhancement."

It is undisputed that the 2014 juvenile adjudication for GSI is conduct unrelated to the offense of conviction. Under the authority cited above, the enhancement does not apply.

Defendant further submits that his 2014 adjudication for GSI does not qualify as "sexual abuse or exploitation." As explained by the Sixth Circuit Court of Appeals in the October 5, 2021 unpublished opinion, *Craig Trout v. USA,* 20-1495 (attached as Exhibit A):

> Sexual abuse or exploitation" refers to (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). Id. These statutes primarily criminalize the use of force or threats to engage in a "sexual act" (§§ 2241-43), conduct related to the production of child pornography (§§ 2251, 2251A, 2260(b)), and sex trafficking (§§ 2421, 2422, 2423). A "sexual act" is defined as contact between the penis and the vulva or anus; contact between the mouth and the penis, vulva, or anus; penetration of the anal or genital opening by a hand, finger, or object, with the necessary intent; or "touching . . . the genitalia of another person who has not attained the age of 16 years," with the necessary intent. 18 U.S.C. § 2246(2).

> Ohio Revised Code 2907.05(B), Gross Sexual Imposition, states in relevant part:

> No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

5

This offense does not involve any element requiring the "use of force or threats to engage" in a sexual act. Similarly, the conduct described in paragraph 52 of the PSR does not include "use of force or threats." Accordingly, the juvenile adjudication for GSI is not a predicate offense for the "pattern of abuse" enhancement.

### B. Defendant is not a repeat and dangerous sex offender against minors

Defendant also objected to PSR's conclusion that because of Defendant's 2014 adjudication for GSI, he qualified under 4B1.5 as a Repeat and Dangerous Sex Offender Against Minors. (PSR 47). However, this enhancement did not impact the total offense level because the calculations under Chapters 2 and 3 were already higher than the calculation under 4B1.5(a)(1). For this reason (and regardless of whether this Court agrees that the 4-point enhancement under 2G2.2(b)(5) does not apply as discussed above), the enhancement does not apply.

In the event that this Court concludes that the Repeat and Dangerous Offender Against Minors designation does apply and/or should otherwise impact sentencing, Defendant submits that his 2014 juvenile adjudication for GSI does not qualify as a "sex offense conviction." Indeed, When the Guidelines apply to juvenile adjudications, they say so expressly. § 4A1.2(d) specifically addresses "juvenile sentences," and the application notes to § 4A1.2 describe in detail how juvenile adjudications are to be treated with regard to the term "prior sentence." *See United States v. Williams,* 891 F.2d 212, 215 (9th Cir.1989). In contrast, the Guidelines do not specify that juvenile adjudications under § 4B1.5 may be considered at all.

### IV. §3553(a) FACTORS

#### A. Nature and Circumstances of the Offense

**Count One: Possession of Child Pornography**

6

As explained in the PSR, Jordan engaged in exchanging images of child sexual abuse material (CSAM) via Facebook and Random Chat, with someone he met online. (PSR 10). Shortly thereafter, Jordan consented to an interview with law enforcement without an attorney, confessed to his conduct and consented to the seizure of his phones. *Id.* Undersigned counsel viewed the CSAM found on Jordan's devices and determined that while the images were illegal and troubling, the images were older, and easily distinguishable from sophisticated collectors using modern computer and internet technologies.

**Count Two: Conspiracy to Produce Child Pornography**

The PSR also sets forth all of the details surrounding the production charge that arose during Jordan's incarceration at Belmont Correctional Institution, and following his on-line romance with co-conspirator Amy Womack. (PSR 12-16). Just as he did in Count One, when interviewed by law enforcement officers, Jordan admitted to his involvement and readily confirmed that he was the individual communicating with Ms. Womack. Moreover, Jordan promptly accepted responsibility for his conduct and agreed to plead to this offense by way of a Bill of Information.

**B. History and Characteristics of the Defendant**

Jordan was born premature and initially raised by two parents, both of whom were ill-equipped to adequately care for him. Jordan grew up in a rural area with little resources and surrounded by poverty. Both parents abused drugs and alcohol and Jordan's biological father was both incredibly cruel and abusive. After his mother fled with Jordan and his sister, the physical abuse stopped. Jordan also disclosed (and his mother verified) that he was also the victim of sexual abuse. Further complicating things was the fact that Jordan suffered from "widespread cognitive impairments." Jordan's intellectual limitations exposed him to ridicule and bullying and as

7

explained by neuropsychologist Ryan Mekota, "Individuals with intellectual disability (ID) are at significantly increased risk of being victims of sexual abuse and sexual abuse victimization can accordingly increase the risk of perpetration. ID presents a unique vulnerability for engaging in sexual perpetration due to numerous cognitive, social and emotional deficits." According to Dr. Mekota, "Jordan's cognitive resources are limited to a level closer to a child in early adolescence than a peer-aged adult."

It appears that even after Jordan escaped the brutal violence of his biological father, Jordan still did not receive the support he needed to optimize his level of functional independence, stability and behavioral regulation. As Jordan got older, his problems persisted and he turned to drugs and alcohol to cope. Jordan still struggles with substance abuse issues, and major depressive disorder.

Throughout his incarceration for the instant offenses, Jordan has consistently accepted responsibility for his conduct is actively interested in treatment opportunities. He understands that he needs help and desperately wants to engage in effective treatment and counseling.

### C. **Just Punishment, Adequate Deterrence, Protection of the Public, and Needed Treatment**

Jordan understands that his offenses mandate a significant term of imprisonment and agrees that such a sentence is warranted. However, Jordan is unique in that his cognitive limitations and history of struggles and abuse is well documented and verified by his mother and a forensic neuropsychologist. In addition, to date, the resources available to him and opportunities to improve himself have been limited. This shy, polite and very depressed young man is still worthy of an opportunity for redemption.

**V.     CONCLUSION**

In light of all of the aforementioned factors, Defendant Jordan Dodd respectfully requests that he receive a mitigating sentence that gives him the encouragement to earnestly engage in treatment and prepare for a law abiding and productive life back in the community.

Respectfully submitted,

    /s/   Rasheeda Z. Khan
Rasheeda Z. Khan (0075054)
Peterson Law, LLP
545 Metro Place South, Suite 435
Dublin, Ohio    43017
(614) 745-8849
rkhan@peterson-llp.com
*Attorney for Defendant Jordan Dodd*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of Defendant's Sentencing Memorandum was electronically served upon, via the Clerk's e-filing system on this 20th day of July, 2025.

    /s/   Rasheeda Z. Khan
Rasheeda Z. Khan

9